AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-2018)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

<table>
<tr><td>
In the Matter of the Search of<br>
<em>(Briefly describe the property to be searched<br>
or identify the person by name and address)</em><br>
Scott Tugby and Residence Located at 21712 125th<br>
Street Court East, Bonney Lake, Washington 98391,<br>
more fully described in Attachments A-1 and A-2
</td>
<td>
)<br>)<br>)<br>)<br>)<br>)
</td>
<td>
Case No. 3:24-mj-05005
</td></tr>
</table>

**FILED** _____ **LODGED**
_____ **RECEIVED**

**JAN 08 2024**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Person Scott Tugby and Residence, more fully described in Attachments A-1 and A-2, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and 846 | Distribution and Possession with Intent to Distribute Controlled Substances, and Conspiracy to Commit these Offenses |

The application is based on these facts:

✓  See Affidavit of Special Agent Jared Gibb, continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or, ☐ telephonically recorded.

_____
*Applicant's signature*

Jared Gibb, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 01/08/2024 _____

_____
*Judge's signature*

City and state:  Tacoma, Washington

Theresa L. Fricke, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

**STATE OF WASHINGTON**     )
                              )      **ss**
**COUNTY OF PIERCE**       )

     I, Jared Gibb a Special Agent with the Drug Enforcement Administration, United States Department of Justice, being first duly sworn on oath, depose and state as follows:

## AFFIANT BACKGROUND

     1.      I am a Special Agent of the Drug Enforcement Administration (DEA), and have been so employed since February 2009. I am currently assigned to the DEA Tacoma Resident Office (TRO) in the Seattle Field Division. I am a criminal investigator of the United States within the definition of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21 and Title 18 United States Code.

     2.      I received 20 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from September 2008 to February 2009. The training curriculum included comprehensive, formalized instruction in, among other things: basic and complex drug-trafficking investigations, identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, undercover operations and financial/money laundering investigations.

     3.      During my career as a Special Agent, I have been involved in more than one hundred drug-trafficking investigations of varying scope and complexity, from street-level dealers to international drug-trafficking organizations. I was previously assigned to DEA offices in Afghanistan and Colombia, where I worked with host-country counterparts to conduct investigations of international drug-trafficking organizations and money-laundering organizations. I have become familiar with the methods used by individuals engaged in the manufacture, transportation and trafficking of controlled

Affidavit of SA Jared Gibb - 1
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

substances. I have directed the actions of confidential informants and I have acted in an undercover capacity on numerous occasions. I have interviewed informants, suspects, defendants and other experienced drug traffickers regarding the methods and practices utilized by drug traffickers and drug trafficking organizations. I have monitored informant conversations with drug traffickers, as well as drug-related conversations between drug traffickers as part of court-authorized interception of wire communications. I have participated in the preparation of numerous affidavits and the execution of search and arrest warrants for violations of federal and state drug laws. In light of the foregoing, I am familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed, as well as methods of operation and communication utilized by drug traffickers.

## PURPOSE OF AFFIDAVIT

4.      This affidavit is submitted in support of an application pursuant to Federal Rule of Criminal Procedure 41 for a search warrant to search the following location and individual:

a.      **Target Residence:** 21712 125th Street Court East, Bonney Lake, Washington, as more fully set forth in Attachment A-1, which is incorporated herein by reference.

b.      **Scott TUGBY:** the person of Scott TUGBY, associated with the Target Residence at 21712 125th Street Court East, Bonney Lake, Washington and pictured in the photograph in Attachment A-2.

5.      As set forth below, I submit that there is probable cause to believe that the aforementioned location and individual will contain or possess evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy to commit these offenses). I seek authorization to search and seize items specified in Attachment B, which is incorporated herein by reference.

Affidavit of SA Jared Gibb - 2
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

6.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. When the statements of others are set forth in this affidavit, they are set forth in substance and in part.

## SOURCES OF INFORMATION

7.      In the following paragraphs, I reference information provided to investigators by four Cooperating Defendants, referred to as "CD1," "CD2," "CD3," and "CD4":

8.      Cooperating Defendant 1 (CD1) was arrested in April 2023 by officers of the Puyallup Police Department. CD1 provided information to DEA and partner law enforcement agencies during two post-arrest interviews in May 2023. CD1 provided the information in exchange for potential judicial consideration for future drug and firearms charges. Some of the information reported by CD1 was previously known to investigators and has been independently corroborated through previous investigation. Other information provided by CD1 was unknown to investigators. CD1 made statements against self-interest during the interviews. CD1 has criminal history consisting of arrests and/or convictions for forgery, driving without a valid license, possession of stolen property, residential burglary, possession of a stolen firearm, theft of a firearm, physical control, possession of a controlled substance with intent to distribute, unlawful possession of a firearm, bail jumping, and trespassing. CD1 demonstrated familiarity with various types of controlled substances, their prices and manner of trafficking. CD1 did

Affidavit of SA Jared Gibb - 3
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   not provide any information during the interviews that was later determined to be false or
2   misleading.

3        9.    Cooperating Defendant 2 (CD2) was arrested in September 2023 by
4   investigators of the DEA and Juneau (Alaska) Police Department (JPD). CD2 provided
5   information to DEA and partner law enforcement agencies during a post-arrest interview
6   in September 2023. CD2 provided the information in exchange for potential judicial
7   consideration for future drug trafficking charges. Some of the information reported by
8   CD2 was previously known to investigators and has been independently corroborated
9   through previous investigation. Other information provided by CD2 was unknown to
10   investigators. CD2 made statements against self-interest during the interview. CD2 has
11   criminal history consisting of arrests and/or convictions for driving under the influence,
12   reckless endangerment, driving without a valid license, possession of drug paraphernalia,
13   destruction of property and unlawful possession of a firearm. CD2 did not provide any
14   information during the interview that was later determined to be false or misleading.

15        10.    Cooperating Defendant 3 (CD3) was arrested in September 2023 by
16   investigators of the DEA and JPD. CD3 provided information to DEA and partner law
17   enforcement agencies during a post-arrest interview in September 2023. CD3 provided
18   the information in exchange for potential judicial consideration for future drug trafficking
19   charges. Some of the information reported by CD3 was previously known to investigators
20   and has been independently corroborated through previous investigation. Other
21   information provided by CD3 was unknown to investigators. CD3 made statements
22   against self-interest during the interview. CD3 has a criminal history consisting of arrests
23   and/or convictions for: criminal mischief, interfering with report of domestic violence,
24   interfering with arresting officer, assault, harassment, reckless endangerment, vehicle
25   theft, driving with a suspended license, violation of conditions of release, DUI, failure to
26   stop at direction of police, larceny, trespassing, and tampering with Property. CD3 did

27

Affidavit of SA Jared Gibb - 4
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   not provide any information during the interview that was later determined to be false or
2   misleading.

3       11.     Cooperating Defendant 4 (CD4) was arrested in September 2023 by
4   investigators of the Ketchikan (Alaska) Police Department (KPD) and the Alaska State
5   Troopers (AST). CD4 provided information to investigators during a post-arrest
6   interview in November 2023. CD4 provided the information in exchange for potential
7   judicial consideration for future drug trafficking charges. Some of the information
8   reported by CD4 was previously known to investigators and has been independently
9   corroborated through previous investigation. Other information provided by CD4 was
10  unknown to investigators. CD4 made statements against self-interest during the
11  interview. CD4 has a criminal history consisting of arrests and/or convictions for drug
12  possession/manufacture/deliver, burglary, possession of stolen property, theft, receiving
13  stolen property, probation violation, unlawful firearm possession, DUI, obstruction and
14  assault. CD4 did not provide any information during the interview that was later
15  determined to be false or misleading.

16                              **PROBABLE CAUSE**

17      12.     Special Agents (SA) and Task Force Officers of the U.S. Drug
18  Enforcement Administration (DEA), Homeland Security Investigations (HSI), and
19  state/local law enforcement agencies are investigating a drug trafficking organization
20  (DTO) that is based in Mexico and is distributing controlled substances, including
21  methamphetamine, fentanyl powder, counterfeit oxycodone pills containing fentanyl[1] and
22  heroin, in the Western District of Washington.

23      13.     During this investigation, which began in early 2022, Agents have
24  conducted multiple controlled purchases of fentanyl pills from the DTO, some of which

---

[1] Based on my training and experience, I know that drug trafficking organizations (especially those operating from Mexico) clandestinely produce and traffic counterfeit pills that contain fentanyl. The pills are made to resemble 30 mg oxycodone prescription pills. The pills are typically blue in color and stamped with "M" on one side and "30" on the other, and are commonly referred to as "M-30's" or "blues."

Affidavit of SA Jared Gibb - 5
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

are described below. Agents have also interviewed multiple suspects, sources of information and confidential sources who have knowledge of the DTO's operations. These interviews, together with surveillance, controlled purchases, and reviews of cell phones seized from suspects, have revealed that the DTO operates using a system of "dispatchers" and "runners." In this system, a dispatcher, who is typically located in Mexico, communicates with a drug buyer by telephone to arrange a drug transaction. The dispatcher and the buyer agree on a specific amount of drugs at a specific price, and also a location for the transaction. The dispatcher and then sends a runner or "driver" to deliver the drugs to the buyer at the agreed upon location in Washington.

14.     In December 2022, an undercover Task Force Officer (hereafter "UC") began communicating with unidentified dispatchers for the DTO. The UC posed as a drug buyer. The UC knew that one of the dispatchers used the nickname "Pocho." Between December 2022 and April 2023, the UC communicated with Pocho, who used multiple telephone numbers during that timeframe.

15.     On Wednesday, January 17, 2023, the UC contacted Pocho by text message and requested to purchase 1,000 fentanyl pills. The UC and Pocho agreed to conduct the transaction at the parking lot of a shopping mall in King County, Washington. Agents/officers established surveillance in the vicinity of the meet location. The UC was provided with Official Funds to purchase the pills. The UC then drove to the meet location, while under constant surveillance, and waited in the parking lot.

16.     The UC communicated by text messages with Pocho, who directed the UC to meet with an unidentified Hispanic male runner who was driving a blue Hyundai Santa Fe. The UC exited the UC vehicle and entered the front passenger seat of the Santa Fe. The driver and sole occupant of the Santa Fe was an unidentified Hispanic male who was approximately 20 to 25 years old. The UC handed the Official Funds to the driver who counted the money, then opened the center console and pulled out a zip lock bag containing a crystal substance that the UC recognized as methamphetamine. The UC told

1  the driver that he had arranged to purchase pills. The driver used a cell phone to call

2  another Hispanic male and spoke in Spanish in the presence of the UC.

3       17.    After the call was completed, the unidentified Hispanic male reached into a

4  duffle bag behind the front passenger seat and produced a zip lock bag containing

5  approximately 1,000 round, blue pills stamped "M" and "30," which he handed to the

6  UC. The UC then exited the Santa Fe, entered the UC vehicle and departed.

7       18.    Since that initial controlled purchase, the UC conducted multiple

8  additional undercover purchases from the DTO. These purchases occurred in February

9  2023 in King County, Washington (when the UC purchased 2,000 fentanyl pills) and

10  March 2023 in Grays Harbor County, Washington (when the UC purchased 1,000

11  fentanyl pills and eight ounces of methamphetamine). All of the UC purchases occurred

12  similar to the one described above—the UC communicated by phone with Pocho or

13  another unidentified male dispatcher, who sent a driver to deliver the drugs to the UC.

14  **Interview with CD1 in May 2023 and Identification of Target Residence**

15       19.    On May 5, 2023, I interviewed CD1, who was arrested in April 2023 in

16  Pierce County, Washington for drug trafficking and illegal firearms possession. At the

17  time of the interview, CD1 was incarcerated. During the interview, CD1 provided the

18  following information: CD1 stated that prior to his/her arrest, his/her source-of-supply for

19  illegal drugs, including fentanyl, methamphetamine, heroin and cocaine was an

20  unidentified male Hispanic male who is known to CD1 as "Pancho." CD1 has never met

21  or seen Pancho in person. Pancho speaks English and communicates with CD1 by phone

22  calls and text messages. CD1 was introduced to Pancho over the telephone approximately

23  one year ago. CD1 was introduced to Pancho as a drug buyer. From that time until the

24  present, CD1 has communicated with Pancho frequently to purchase illegal drugs. Prior

25  to his/her arrest, CD1 had purchased drugs from Pancho multiple times each week for

26  approximately four months. The purchases have varied in quantity from 3,000 to 35,000

27

Affidavit of SA Jared Gibb - 7
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  fentanyl pills, as well as multiple ounces of powder fentanyl, methamphetamine, and
2  cocaine.

3  20.  CD1 explained that when s/he wants to purchase drugs, s/he communicates
4  with Pancho and arranges to purchase a specific amount of drugs at a specific price. S/he
5  then provides a location for the transaction. Pancho then sends a "runner" or "driver" to
6  deliver the drugs to CD1. When the runner arrives at the location, CD1 meets the runner
7  and provides cash to purchase the drugs and the runner provides the drugs.

8  21.  CD1 stated that he normally communicates with Pancho via WhatsApp
9  (through both messages and VOIP calls) but at times Pancho also communicates via
10  regular voice calls and text messages. CD1 stated that Pancho was using telephone
11  (206)775-0074 (TT18) in the months prior to CD1's arrest. This is the same number for
12  "Pocho" that the UC was communicating with in January 2023. Based on CD1's
13  statements that Pancho previously used TT18, which is the same number that the UC
14  used to communicate with Pocho, investigators believe that Pancho and Pocho are the
15  same person.

16  22.  CD1 agreed to show agents his/her communications with Pancho and other
17  suspects in his/her cell phone, which s/he possessed at the time of arrest. CD1 showed me
18  WhatsApp communications between CD1 and TT34. I observed that the messages were
19  consistent with communications arranging and conducting drug transactions. I observed
20  in the messages that Pancho was supplying drugs to CD1. At one point in the
21  communications, I observed that CD1 and Pancho discussed a third person, who they
22  referred to as "Justin."

23  23.  CD1 stated that "Justin" referred to Justin Dorsey. CD1 stated that Dorsey
24  is a drug distributor who operates in the Tacoma, Washington area and who works with
25  Pancho. CD1 positively identified a Washington driver's license photograph of Dorsey.
26  CD1 stated that Dorsey's drug supplier is Pancho and that Dorsey meets with Pancho's
27  runners on a daily basis to purchase drugs, which he then distributes to other drug

Affidavit of SA Jared Gibb - 8
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  traffickers in the Tacoma area. CD1 knows this because of CD1's close association with

2  Dorsey.

3      24.    CD1 stated that Dorsey lives at 21712 125th Street CT E, Bonney Lake,

4  Washington (the "Target Residence"). CD1 provided a telephone number that Dorsey

5  was using at the time of the interview: (253) 448-7792 ("TT36"). CD1 stated that Dorsey

6  drives a white Audi hatchback.

7      25.    CD1 stated that Dorsey lives at the Target Residence with another

8  unidentified white male suspect, who is the owner or renter of the residence. CD1 stated

9  that s/he does not know the suspect's name, but does know that he frequently conducts

10  illegal drugs sales at the Target Residence.

11      26.    Agents conducted a check of law enforcement databases, which showed

12  that Dorsey has a criminal record including arrests for theft, trafficking stolen property,

13  unlawful possession of a firearm and trespassing. On May 5, 2023, investigators

14  conducted surveillance at the Target Residence and observed a white Audi hatchback

15  parked in the driveway of the residence, along with several other vehicles.

16      27.    On May 16, 2023, Judge Timothy L. Aschraft of the Superior Court of

17  Washington, Pierce County, authorized a warrant for real-time location data for Dorsey's

18  cell phone (TT36). DEA personnel began to receive real-time location data for TT36 on

19  May 17, 2023. Between that date and May 31, 2023, real-time location data for TT36

20  showed that the device frequented the area of the Target Residence. The radius of error of

21  the location data varied between 500 and 1500 meters, but the Target Residence was

22  located within the radius when the device was in that area. On or about May 31, 2023, the

23  cell phone provider ceased to provide real-time location data, indicating that Dorsey

24  ceased using the phone.

25  **Interview of CD2 and CD3 in September 2023**

26      28.    On September 22, 2023, investigators of the DEA and Juneau Police

27  Department (JPD) detained CD2 and CD3 at the Juneau International Airport in Juneau,

Affidavit of SA Jared Gibb - 9
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 Alaska as they deboarded a flight from Seattle, Washington. Based on the investigation,

2 investigators believed that CD2 and CD3 were transporting drugs to Alaska on the flight.

3 CD2 and CD3 were traveling together. Investigators separated CD2 and CD3 and spoke

4 with each suspect individually.

5       29.    CD2 initially denied that s/he and CD3 had transported drugs from Seattle

6 to Juneau, while CD3 provided consent for investigators to search his/her carry-on

7 luggage. Inside the luggage, investigators located approximately 67.48 grams of white

8 powder (suspected fentanyl) in a plastic container. CD3 stated that the white powder was

9 fentanyl. As the interviews continued, both CD2 and CD3 agreed to cooperate with

10 investigators. CD2 also provided consent for investigators to search his/her handbag.

11       30.    During a search of the handbag, investigators located and seized the

12 following substances: (1) approximately 792 grams of blue pills (suspected to contain

13 fentanyl), each of which was stamped "M" and "30" and contained in a plastic bag; (2)

14 approximately 97.31 grams blue pills (suspected to contain fentanyl), each of which was

15 stamped "M" and "30" and contained in an orange pill bottle; (3) approximately 74.18g

16 grams of white powder (suspected fentanyl), wrapped in clear plastic; (4) approximately

17 47.38 grams of a black substance (suspected heroin), wrapped in clear plastic; and (5)

18 approximately 31.0 grams of a powdery crystal substance (suspected methamphetamine),

19 contained in a small plastic bag.

20       31.    CD2 admitted to transporting the drugs from Washington to Alaska. In

21 separate interviews, CD2 and CD3 provided information regarding the origin of the drugs

22 seized from their luggage.

23       32.    CD2 stated that s/he traveled with CD3 from Alaska to Seattle, Washington

24 approximately two weeks prior to September 22, 2023. CD2 stated that s/he traveled to

25 the Seattle area to meet with his/her drug supplier, who lives in Bonney Lake,

26 Washington and who is known to CD2 as "Scott." CD2 described "Scott" as a short,

27

Affidavit of SA Jared Gibb - 10
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  white male, with blonde hair, in his 40's. CD2 stated that "Scott" lives in a house in

2  Bonney Lake located on "125th, at the end of the road."

3      33.    DEA SA Chernecke showed CD2 an overhead map (via Google Maps) of

4  125th Street Court East, Bonney Lake, Washington. CD2 identified 21712 125th Street

5  Court East (the Target Residence) on the overhead map as "Scott's" residence. SA

6  Chernecke then located a "street view" of the Target Residence via Google Maps. Prior

7  to showing CD2 the street view, CD2 accurately described the appearance of the Target

8  Residence to investigators. SA Chernecke then showed the street view of the Target

9  Residence to CD2, who positively identified the street view of the Target Residence as

10 "Scott's" residence. CD2 stated that "Scott" said that he has lived at the Target Residence

11 his whole life.

12     34.    CD2 stated that s/he met Scott on multiple occasions while s/he was in the

13 Seattle area. CD2 initially met with Scott at a grocery store in Bonney Lake. During that

14 meeting, Scott provided CD2 several thousand blue "M-30" pills and instructed him/her

15 to transport the pills to Juneau and deliver them to a third party there. CD2 also

16 purchased additional "M-30" pills from Scott for "personal use." CD2 stated that the pills

17 which investigators seized from CD2's handbag are the pills that Scott delivered to

18 him/her. CD2 stated that s/he did not count or weigh the pills, but s/he believes that there

19 were approximately 5,000 pills. Scott told CD2 that in the future he plans to send a

20 shipment of 50,000 fentanyl pills to Juneau and requested that CD2 find people who are

21 willing to transport the pills from the Seattle area to Juneau.

22     35.    CD2 stated that s/he met with Scott at a grocery store to conduct the

23 transaction because Scott did not want people to know where he lives. Later, after CD2

24 and CD3 were delayed in returning to Alaska from Seattle, CD2 and CD3 went together

25 to the Target Residence on multiple occasions and met with Scott there. CD2 and CD3

26 stayed at the Target Residence off-and-on for several days because they did not have

27

Affidavit of SA Jared Gibb - 11
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  another place to stay while waiting to return to Alaska. CD2 stated that s/he did not see
2  any drugs in Scott's house, but that s/he was not allowed access to all areas of the house.

3  **Interview of CD3 on September 22, 2023**

4      36.     During an interview with investigators, CD3 provided information that
5  corroborated the information provided by CD2. CD3 stated that s/he traveled with CD2
6  from Alaska to Seattle approximately two weeks prior to September 22, 2023. CD3 stated
7  that CD2 has a drug supplier who lives in the Seattle area. CD3 stated that CD2's drug
8  supplier as a white male, whose name is "Scott." CD3 described Scott as short,
9  approximately 45 years of age, with athletic build and short reddish hair. CD3 did not
10 know Scott prior to traveling to Seattle with CD2.

11     37.     CD3 stated that, while in the Seattle area for approximately two weeks,
12 CD2 and CD3 met Scott on multiple occasions. The first time CD2 met with Scott, CD3
13 was not present. Later, CD3 accompanied CD2 to the Scott's residence on multiple
14 occasions.

15     38.     At first, CD3 was not allowed to enter the residence and waited in the car
16 outside while CD2 met with Scott. CD2 described Scott's house as "really nice" (i.e. well
17 maintained), fenced, with large trees and plants and a well landscaped yard, with a garage
18 on the right side of the house. The description provided by CD2 matches the physical
19 description of the Target Residence.

20     39.     On a subsequent visit to the Scott's residence, CD2 introduced CD3 to
21 Scott, and CD3 entered the Target Residence while CD2 met with Scott. CD3 overheard
22 Scott discussing "50,000 pills" with CD2. CD3 did not see drugs inside the Target
23 Residence, but s/he was not allowed access to all areas of the house.

24 **Interview of CD4 in October 2023**

25     40.     During the past several months, investigators of the Ketchikan (Alaska)
26 Police Department (KPD) have been investigating a network of drug traffickers who
27 distribute illegal drugs, including fentanyl, heroin, and methamphetamine, in Alaska. The

Affidavit of SA Jared Gibb - 12
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

investigation revealed that the group has drug sources of supply in the Seattle,
Washington area. On October 20, 2023, KPD officers executed a search warrant at a
hotel room in Ketchikan, Alaska. CD4 was present in the hotel room with another suspect
at that time. Both CD4 and the other suspect were arrested for various drug trafficking
crimes. During a search of the hotel room, investigators seized approximately 850 "M-
30" pills (suspected to contain fentanyl) and 56.4 grams of methamphetamine.

41.     During a post-arrest interview on November 7, 2023, CD4 provided
information to investigators of the KPD, the Alaska State Troopers and the Alaska
Department of Corrections. CD4 identified Scott TUGBY as a drug trafficker who
resides and operates in Bonney Lake, Washington. CD4 knows TUGBY personally, as
well as multiple other individuals who are supplied drugs by TUGBY. CD4 stated that
TUGBY supplies multiple drug traffickers who distribute drugs in the Seattle area. CD4
also stated that TUGBY coordinates for couriers to transport illegal drugs from the
Seattle area to Alaska, where the drugs are sold.

42.     CD4 stated that TUGBY resides at a house in Bonney Lake. CD4 does not
know the address of TUGBY's residence, but s/he has been to the residence on multiple
occasions. CD4 provided a physical description TUGBY's residence, which was
consistent with the physical description of the Target Residence. CD4 stated that
TUGBY's residence has a mechanical/electrical gate, as well as security cameras. I am
familiar with the Target Residence from conducting surveillance there, and I know that
the Target Residence has a mechanical gate in the front and security cameras. CD4 drew
a sketch of the Target Residence, which investigators later provided to me. I observed
that the sketch is consistent with the Target Residence, including the location/orientation
of the garage, driveway, front door and the overall layout of the residence.

43.     CD4 stated that TUGBY works with Mexican drug suppliers. CD4 was at
TUGBY's residence multiple times in the summer of 2023 and observed unidentified
Mexican males arrive at TUGBY's residence to meet with TUGBY. On one occasion,

Affidavit of SA Jared Gibb - 13
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  CD4 observed TUGBY give a backpack full of U.S. currency to one of the Mexican

2  males. In approximately July 2023, CD4 was inside TUGBY's residence and observed

3  that TUGBY had a large amount of fentanyl powder in the residence. CD4 estimated the

4  quantity to be approximately 40 pounds. CD4 stated that s/he observed a safe in a back

5  room of TUGBY's residence where TUGBY stores drugs and cash.

6  **Surveillance of TUGBY at the Target Residence**

7  44.    In November 2023, I conducted a search of Washington Department of

8  Licensing (DOL) databases and located a Washington driver's license for TUGBY. I

9  observed that TUGBY has a listed address of 21712 125th Street Court East, Bonney

10  Lake (the Target Residence). I also conducted law enforcement database checks

11  regarding TUGBY and observed that he has a criminal record dating back to 1999 that

12  includes multiple felony and misdemeanor arrests for drug trafficking, theft, assault and

13  other crimes.

14  45.    In November 2023, I received information from DEA Task Force Officer

15  (TFO) Todd Morrow, who is a Detective for the Bonney Lake Police Department

16  (BLPD). TFO Morrow, who has worked as a patrol officer and detective for BLPD since

17  2005, is familiar with TUGBY. TFO Morrow is aware from his work as a patrol officer

18  and detective for BLPD that TUGBY has been involved in drug trafficking and other

19  criminal activity in the Bonney Lake area since at least 2005.

20  46.    In November 2023, I conducted searches of open source databases

21  regarding TUGBY and the Target Residence. I observed that the Target Residence is

22  listed as TUGBY's residence in multiple open source records with cell phone providers,

23  State of Washington court records and police reports from State of Washington law

24  enforcement agencies.

25  47.    On November 16, 2023, DEA agents conducted surveillance at the Target

26  Residence. Shortly after establishing surveillance, agents observed TUGBY standing

27  outside the Target Residence in the driveway. Agents recognized TUGBY from his

Affidavit of SA Jared Gibb - 14
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Washington Department of Licensing (DOL) photograph. Agents observed TUGBY using a pressure washer to clean the driveway and the street in front of the Target Residence. A short time later, TUGBY departed the Target Residence driving a gold sedan. TUGBY drove to a Home Depot in Bonney Lake. He entered the store briefly and then returned to the Target Residence.

48.     While conducting surveillance at the Target Residence on November 16, 2023, agents did not see anyone other than TUGBY at the residence. However, agents do believe that other individuals likely reside at the residence. On December 14, 2023, I searched DOL databases and observed that Gregory Tugby and Diane Tugby (believed to be TUGBY's parents) have driver's licenses listed at the Target Residence. I then conducted a search of open sources and observed that Gregory Tugby passed away in 2015. Additional, DOL records show that Krista Franco has a driver's license listed at the target residence.

49.     On the morning of January 4, 2023, DEA agents again conducted surveillance at the Target Residence. After establishing surveillance, agents observed Tugby walking in front of the Target Residence, toward the front door. Several hours later, agents observed a silver Honda sedan back out of the driveway of the Target Residence. A check of DOL records showed that the Honda is currently registered to Krista Franco at the Target Residence.

50.     Agents followed the Honda, which stopped at a residence several blocks away. Less than five minutes later, the Honda departed the residence and traveled to another nearby residence, where it stopped for approximately 10 minutes. The Honda then returned to the Target Residence, where it stopped for less than five minutes, then departed again. Agents continued to follow the Honda as it traveled to a restaurant in Tacoma, Washington. At that location, agents were able to clearly observe the occupants of the Honda. Agents recognized Tugby as the front-seat passenger and Franco as the driver of the Honda.

## TACTICS USED BY DRUG TRAFFICKERS

51.     Based upon my training, experience, and participation in this and other investigations involving drug trafficking, my conversations with other experienced agents and law enforcement agents with whom I work, and interviews of individuals who have been involved in the trafficking of methamphetamine, fentanyl, heroin, cocaine and other drugs, I have learned and know the following:

        a.      It is common for drug traffickers to hide proceeds of illegal drug sales and records of illegal drug transactions in secure locations within their residences, stash houses, storage units, garages, outbuildings and/or vehicles on the property for their ready access and to conceal them from law enforcement authorities.

        b.      It is common to find papers, letters, billings, documents, and other writings, which show ownership, dominion, and control of businesses, residences, and/or vehicles in the residences, stash houses, storage units, garages, outbuildings and/or vehicles of drug traffickers. Items of personal property that tend to identify the persons in residence, occupancy, control, or ownership of the premises also include canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, keys, financial papers, rental receipts and property ownership papers, personal and business telephone and address books and telephone toll records, and other personal papers or identification cards in the names of subjects involved in the criminal activity being investigated.

        c.      Drug traffickers frequently amass large amounts of proceeds, in the form of cash, from the illegal sale of drugs that they attempt to legitimize or "launder." To accomplish this goal, drug traffickers use financial institutions and their attendant services, securities, cashier's checks, safe deposit boxes, money drafts, real estate, shell operations, and business fronts. Persons involved in drug trafficking and/or money laundering keep papers relating to these activities for future reference, including federal and state tax records, loan records, mortgages, deeds, titles, certificates of ownership,

records regarding investments and securities, safe deposit box rental records and keys, and photographs. I know from my training and experience that often items of value are concealed by persons involved in large-scale drug trafficking inside of safes, lock boxes, and other secure locations within their residences, outbuildings, and vehicles.

d.      Drug traffickers often place assets in names other than their own to avoid detection by investigative/police agencies, and even though these assets are in the names of other individuals or businesses, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

e.      Drug traffickers often document aspects of their criminal conduct through photographs or videos of themselves, their associates, their property, and their products, including drugs and drug proceeds. Drug traffickers usually maintain these photographs or videos in their possession.

f.      Drug traffickers often maintain large amounts of U.S. currency in order to maintain and finance their ongoing illegal drug trafficking business. Often, drug traffickers from other countries operating in the United States use wire remitters and bulk cash transfers to transfer currency to co-conspirators living in other states or countries.

g.      Drug traffickers commonly have in their possession, on their person, and at their residences and/or in their storage units, firearms and other weapons, which are used to protect and secure their property.

h.      Drug traffickers use mobile electronic devices including cellular telephones and other wireless communication devices to conduct their illegal activities. They often carry these mobiles devices on their persons. Traffickers of controlled substances often use these devices to maintain records of addresses, vehicles, or telephone numbers that reflect names, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Drug traffickers frequently change their cellular telephone numbers to avoid detection by law

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

enforcement, and it is common for drug traffickers to use more than one cellular telephone at any one time.

i.      Drug traffickers use cellular telephones to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that landlines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since the use of cellular telephones became widespread, every drug trafficker with which I have interacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession cellular phones that they previously used, but have deactivated or discontinued using. Based on my training and experience, the data maintained in a cellular telephone used by a drug trafficker is often evidence of a crime or crimes. This includes the following:

j.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

k.      The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by

Affidavit of SA Jared Gibb - 18
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

l.      Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

m.      Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug traffickers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" information within them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

n.      Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

52.      It is common for drug traffickers to possess drugs, drug paraphernalia, and other items which are associated with the sale and use of controlled substances such as

Affidavit of SA Jared Gibb - 19
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

scales, containers, cutting agents, and packaging materials in their residences, stash houses, storage units, garages, outbuildings and/or vehicles on their property.

53.     Drug traffickers frequently try to conceal their identities by using fraudulent names and identification cards. Once identities have been created or stolen from other citizens, drug traffickers use those identifications to falsify records such as Department of Licensing records and phone records for the purpose of theft of services and to evade detection by law enforcement.

54.     It is a common practice for drug traffickers to maintain records relating to their drug trafficking activities in their residences, stash houses, storage units, garages, outbuildings and/or vehicles. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their associates, or alternatively, will be "fronted" these items from their suppliers, such record keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. These records include "pay and owe" records to show balances due for drugs sold in the past (pay) and for payments expected (owe) as to the trafficker's suppliers and distributors, telephone and address listings of clients and suppliers, and records of drug proceeds. These records are commonly kept for an extended period.

55.     Drug traffickers often maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation and distribution of controlled substances. These documents whether in physical or electronic form, are maintained where the traffickers have ready access to them. These documents include travel records, receipts, airline tickets, auto rental agreements, invoices, and other memorandum disclosing acquisition of assets and personal or business expenses. I also know that such records are frequently maintained in drugs traffickers' residences, stash houses, storage units, garages, outbuildings and/or vehicles.

Affidavit of SA Jared Gibb - 20
USAO No. 2022R01357

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## **CONCLUSION**

56.     Based on the foregoing, I submit that probable cause exists to search the **Target Residence** and the person of **Scott TUGBY** for evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

57.     This affidavit and the requested warrant are being presented by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

58.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).


_____
Jared Gibb
Special Agent
Drug Enforcement Administration


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 8th day of January, 2024.


_____
The Honorable Theresa L. Fricke
United States Magistrate Judge

**ATTACHMENT A-1**

**Location to be Searched**

21712 125th Street Court East, Bonney Lake, Washington 98391 **(Target Residence)**

This location is a single family, two-story residence that is brown in color with white trim and a brown composite tile roof, that is pictured in the photograph below. The numbers "21712" are affixed on the north-facing side of the residence to the right of the front door and to the left of the garage door.

The search is to include all rooms within the residence, and any garages or storage rooms, attached or detached, and any vehicles found within the curtilage of the residence, whether or not particularly named among the vehicles for which specific search authorization is sought, and any cellular phones found therein.



Attachment A-1
USAO No. 2022R01357 - 1

**ATTACHMENT A-2**

**Individual to be Searched**

The person of Scott TUGBY, associated with the **Target Residence** at 21712 125th Street Court East, Bonney Lake, Washington 98391 (pictured in the photo below).



**ATTACHMENT B**

**Items to be Seized**

Evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution and possession with intent to distribute controlled substances, and conspiracy to commit these offenses) and occurring in or after July 2021, as follows:

1) Any suspected controlled substances, including, for example, fentanyl, methamphetamine and heroin;

2) Paraphernalia for packaging, smuggling, processing, diluting, manufacturing, weighing, and distributing controlled substances, for example:  hidden compartments, scales, blenders, funnels, sifters, grinders, glass panes, mirrors, razor blades, plastic bags, heat sealing devices, and diluting agents such as inositol, vitamin B12, etc.;

3) Drug Transaction Records:  Documents such as ledgers, receipts, notes, invoices, and similar items relating to the acquisition, transportation, and distribution of controlled substances;

4) Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items;

5) Books, records, receipts, notes, ledgers, and other documents relating to the distribution of controlled substances and communications between members of the conspiracy;

6) Photographs, video tapes, digital cameras, and similar items depicting friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances, and assets derived from the distribution of controlled substances;

Attachment B
USAO No. 2022R01357 - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

7)      Financial records relating to controlled substances income and expenditures of money and wealth, to wit:  money orders, wire transfer records, cashier's checks and receipts, bank account records, passbooks, tax records, safe deposit box keys and records, checkbooks, and check registers, as well as precious metals and gems such as gold, silver, diamonds, etc.;

8)      Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises and/or vehicle, including canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys;

9)      Identification documents, including passports, visas, alien registration cards, any travel documents, immigration documents, driver's licenses, identification cards, and social security cards;

10)      Documents indicating travel in interstate and foreign commerce, to include airline tickets, notes and travel itineraries; airline schedules; gas receipts, bills; charge card receipts; hotel, motel, and car rental statements; correspondence with travel agencies and other travel related businesses; airline, rental car, and hotel frequent flier or user cards and statements; passports and visas; telephone bills; photographs of foreign locations; and papers relating to domestic and international travel;

11)      Safes and locked storage containers, and the contents thereof that are otherwise described in this document;

12)      Latent prints and identifying material from items at the residences and vehicles;

13)      Stored footage from surveillance systems at the locations to be searched which identifies the person(s) in residence, occupancy, control, or ownership of the premises, and suspected buyers or sellers of controlled substances;

Attachment B
USAO No. 2022R01357 - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

14)     Documents and other items tending to show the existence of other stored controlled substances, including rental agreements, receipts, keys, notes, and maps specially concerning off-site storage rooms and/or lockers;

15)     Weapons and other dangerous items, to include rifles, shotguns, knives, and handguns, as well as ammunition, shell casings, bullets, magazines, cleaning equipment, holsters, gun boxes and cases, trigger locks, gun safes, gun parts and tools, targets, receipts, bills of sale, and body armor;

16)     Address books, daily logs, daily telephone diaries, calendars, and appointment books;

17)     United States currency, gift cards, cash cards, and records relating to income derived from, or used or intended to be used to facilitate, buying, selling, and/or distributing controlled substances, and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of the aforementioned crimes of investigation;

18)     Cell phones and other communications devices. If such cell phones or other communications devices are seized, the government may search them without further authorization for the following items:

a.     Assigned phone number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.      Stored list of recent received, sent, and missed calls;

c.     Stored contact information;

d.     Stored photographs, videos, addresses, calendar notes, notes, map history, or documents/files of or related to narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including

Attachment B
USAO No. 2022R01357 - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
any embedded GPS data or other metadata associated with those photographs, videos, and other items;

3
4
5
e.    Stored text messages related to the aforementioned crimes of investigation, including Apple iMessages, Blackberry Messenger messages, or other similar messaging services where the data is stored on the telephone;

6
f.    Stored emails related to the aforementioned crimes of investigation;

7
8
g.    Stored voicemails related to the aforementioned crimes of investigation;

9
10
h.    Stored web browsing history related to the aforementioned crimes of investigation;

11
12
i.    Stored social media content/history related to the aforementioned crimes of investigation;

13
14
15
j.    Stored banking or money transfer history, including application based money transfer data/history (i.e. Venmo or CashApp account data/history); and

16
17
k.    Stored location data, including from any map applications on the cell phone.

18
19
20
21
THE SEIZURE OF CELL PHONES AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH CELL PHONES CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.

22
23
24
25
26
27

Attachment B
USAO No. 2022R01357 - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800